**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**JOSEPH ARMBRUSTER**

     **Petitioner,**

**v.**                                                    **Case No. 8:16-cv-3039-T-36CPT**

**SECRETARY, Department of Corrections,**

     **Respondent.**

_____/


**O R D E R**

This cause comes before the Court on Joseph Armbruster's petition for the writ of habeas corpus under 28 U.S.C. § 2254. (Doc. 1) Armbruster challenges his revocation of probation in his two state convictions for grand theft. The Respondent concedes the petition's timeliness. Upon consideration of the petition (Doc. 1), the response (Doc. 6), and the reply (Doc. 9), and in accordance with the *Rules Governing Section 2254 Cases in the United States District Courts*, the petition will be **DENIED**.


**FACTS**[1]

On June 30, 2005, Armbruster pleaded guilty pursuant to a negotiated plea agreement to second-degree grand theft in case 04-CF-011966. The state court withheld adjudication and placed

---

[1] This factual summary derives from the state post-conviction court's final order denying Armbruster's Rule 3.850 motion for post-conviction relief and the record. (Respondent's Exhibits 4, 9, 10)

Armbruster on ten years of probation. On May 1, 2006, Armbruster pleaded guilty to first-degree grand theft in case 05-CF-019342 and was sentenced to a suspended term of one hundred twenty months imprisonment followed by thirty years of probation. The Florida state court agreed to transfer Armbruster's probation to Ohio. On April 1, 2009, Armbruster was charged in Ohio with theft and forgery. He entered into a negotiated plea and was sentenced to fifty-nine months imprisonment in Ohio. The State of Florida placed a detainer on Armbruster in December 2009. On December 8, 2011, Armbruster was granted early release but remained in an Ohio jail due to the detainer. Armbruster was brought back to Hillsborough County where he admitted to violating his Florida probation. Armbruster's probation was revoked in each of his Florida cases for committing a new crime in Ohio and he was sentenced to concurrent terms of ten years imprisonment in each of his Florida cases. He did not appeal the revocation but filed in state court a Rule 3.800(a) motion to correct an illegal sentence and a Rule 3.850 motion for post-conviction relief, both of which were denied by the state courts. Armbruster's subsequent petition for discretionary review was dismissed by the Florida Supreme Court for lack of jurisdiction and his petition for belated appeal was dismissed by the state appellate court as untimely.

**STANDARD OF REVIEW**

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs this proceeding. *Wilcox v. Florida Dep't of Corr.*, 158 F.3d 1209, 1210 (11th Cir. 1998), *cert. denied*, 531 U.S. 840 (2000). Section 2254(d), which creates a highly deferential standard for federal court review of a state court adjudication, states in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000), the Supreme Court interpreted this deferential standard:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied - - the state-court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal Law, as determined by the Supreme Court of the United States" or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

"The focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, . . . an unreasonable application is different from an incorrect one." *Bell v. Cone*, 535 U.S. 685, 694 (2002). "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 526 U.S. 86, 103 (2011). *Accord Brown v. Head*, 272 F.3d 1308, 1313 (11th Cir. 2001) ("It is the objective

reasonableness, not the correctness *per se*, of the state court decision that we are to decide."). The phrase "clearly established Federal law" encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams*, 529 U.S. at 412.

The purpose of federal review is not to re-try the state case. "The [AEDPA] modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Cone*, 535 U.S. at 693. A federal court must afford due deference to a state court's decision. "AEDPA prevents defendants — and federal courts — from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." *Renico v. Lett*, 559 U.S. 766, 779 (2010). *See also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) ("This is a 'difficult to meet,' . . . and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt' . . . .") (citations omitted).

Review of the state court decision is limited to the record that was before the state court.

> We now hold that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. Section 2254(d)(1) refers, in the past tense, to a state-court adjudication that "resulted in" a decision that was contrary to, or "involved" an unreasonable application of, established law. This backward-looking language requires an examination of the state-court decision at the time it was made. It follows that the record under review is limited to the record in existence at that same time, i.e., the record before the state court.

*Pinholster*, 563 U.S. at 181–82. Armbruster bears the burden of overcoming by clear and convincing evidence a state court factual determination. "[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). This presumption of correctness applies to a finding of fact but not to a

4

mixed determination of law and fact. *Parker v. Head*, 244 F.3d 831, 836 (11th Cir.), *cert. denied*, 534 U.S. 1046 (2001).

## STANDARD FOR INEFFECTIVE ASSISTANCE OF COUNSEL

Armbruster claims ineffective assistance of counsel, a difficult claim to sustain. "[T]he cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Waters v. Thomas*, 46 F.3d 1506, 1511 (11th Cir. 1995) (*en banc*) (quoting *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994)). *Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998), explains that *Strickland v. Washington*, 466 U.S. 668 (1984), governs an ineffective assistance of counsel claim:

> The law regarding ineffective assistance of counsel claims is well settled and well documented. In *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the Supreme Court set forth a two-part test for analyzing ineffective assistance of counsel claims. According to *Strickland*, first, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. *Strickland*, 466 U.S. at 687, 104 S. Ct. 2052.

*Strickland* requires proof of both deficient performance and consequent prejudice. *Strickland*, 466 U.S. at 697 ("There is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); *Sims*, 155 F.3d at 1305 ("When applying *Strickland*, we are free to dispose of ineffectiveness claims on either of its two grounds."). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."

*Strickland*, 466 U.S. at 690. "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." 466 U.S. at 690. *Strickland* requires that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." 466 U.S. at 690.

Armbruster must demonstrate that counsel's alleged error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." 466 U.S. at 691. To meet this burden, Armbruster must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694.

*Strickland* cautions that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." 466 U.S. at 690–91. Armbruster cannot meet his burden merely by showing that the avenue chosen by counsel proved unsuccessful.

> The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial . . . . We are not interested in grading lawyers' performances; we are Interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220–21 (11th Cir. 1992). *Accord Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) ("To state the obvious: the trial lawyers, in every case, could have done something more or something different. So, omissions are inevitable . . . . [T]he issue

is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'") (*en banc*) (quoting *Burger v. Kemp*, 483 U.S. 776, 794 (1987)).  The required extent of counsel's investigation was addressed recently in *Hittson v. GDCP Warden*, 759 F.3d 1210, 1267 (11th Cir. 2014), *cert. denied sub nom.*, *Hittson v. Chatman*, 135 S. Ct. 2126 (2015):

> [W]e have explained that "no absolute duty exists to investigate particular facts or a certain line of defense." *Chandler*, 218 F.3d at 1317. "[C]ounsel has a duty to make reasonable investigations or make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691, 104 S. Ct. at 2066 (emphasis added). "[C]ounsel need not always investigate before pursuing or not pursuing a line of defense. Investigation (even a nonexhaustive, preliminary investigation) is not required for counsel reasonably to decline to investigate a line of defense thoroughly." *Chandler*, 218 F.3d at 1318. "In assessing the reasonableness of an attorney's investigation . . . a court must consider not only the quantum of evidence already known to counsel, but also whether the known evidence would lead a reasonable attorney to investigate further." *Wiggins*, 539 U.S. at 527, 123 S. Ct. at 2538.

*See also Jones v. Barnes*, 463 U.S. 745, 751 (1983) (confirming that counsel has no duty to raise a frivolous claim).

Under 28 U.S.C. § 2254(d) Armbruster must prove that the state court's decision was "(1) . . . contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States or (2) . . . based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Sustaining a claim of ineffective assistance of counsel is very difficult because "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so."  *Richter*, 562 U.S. at 106.  *See also Pinholster*, 563 U.S. at 202 (a petitioner must overcome this "'doubly deferential' standard of *Strickland* and [the] AEDPA"), *Johnson v. Sec'y, Dep't of Corr.*, 643 F.3d 907, 911 (11th Cir. 2011) ("Double deference is doubly difficult for a petitioner to overcome, and it will be a rare case in which an ineffective assistance

of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding."), and *Pooler v. Sec'y, Dep't of Corr.*, 702 F.3d 1252, 1270 (11th Cir. 2012) ("Because we must view Pooler's ineffective counsel claim — which is governed by the deferential *Strickland* test — through the lens of AEDPA deference, the resulting standard of review is "doubly deferential."), *cert. denied*, 134 S. Ct. 191 (2013).

**Ground One**

Armbruster contends that he "was convicted on the basis of a guilty plea that was the product of ineffective assistance of counsel" in violation of his federal rights to counsel and due process. (Doc. 1, p. 5) Armbruster alleges that his trial counsel "provided deficient performance by misadvising the petitioner as to a direct consequence of entering the plea, namely that the Petitioner would receive two years of credit for time served in an Ohio prison after the service of a warrant and detainer by the Florida courts." (Doc. 9, p. 4)

The state post-conviction court granted Armbruster an evidentiary hearing on this ground of ineffective assistance of counsel. Armbruster testified at the hearing on direct examination as follows (Respondent's Exhibit 9, transcript of February 12, 2014, evidentiary hearing, pp. 32–36):

> Q: And at various times during his representation of you on that violation of probation, did [counsel] tell you what would happen to you when you came to Florida or when the Florida case got resolved?
>
> A: We had several conversations.
>
> . . . .
>
> Q: What did he tell you would happen?
>
> A: Our first conversation was that he was going to get two years to run concurrent with my Ohio sentence. From that point, when that didn't seem to be happening, as my time in Ohio was winding down, he said that he did not feel that I was going to be extradited to Florida but that I would have to come down and turn myself in. I was actually extradited once I served my Ohio sentence. Upon — while

I was awaiting extradition in the southeast Ohio regional jail is when we had the conversation regarding that I may want to consider doing a year . . . in order to alleviate the 30 years of probation that was hanging on my head. When I arrived in Florida we had several conversations on the phone and the next time we really discussed any kind of sentencing was at the morning of the hearing and he came to me and said that I scored to 43 months, I had a little over two years in, the State was remaining silent and that we should admit to the violation.

Q: And so based on that conversation, what did you think your prison time would actually be if you admitted to this violation of probation?

A: Doing the quick math in my head I had taken the 43 months and subtracted 24 and had figured that that came right around the number he had given me when I was in Ohio which was a year or so. So, I was thinking that was going to be the worst case scenario.

. . . .

Q: And I believe you just testified that it was when you got your violation of probation hearing that was when you heard that there was a 43-month bottom of the guidelines scoresheet, correct?

A: That's correct, ma'am.

Q: And that you would get that credit for the two years you had spent in Ohio and the State was going to stand silent, correct?

A: Yes, ma'am.

Q: And, so, based on what [trial counsel] told you, is it correct, then, that you did not proceed to a violation of probation hearing?

A: That's correct, ma'am.

Q: Had you known that the 10 year sentence would have been imposed would you still have admitted to the violation of probation or would you have proceeded to a hearing?

A: I would have asked for a hearing, ma'am.

Q: Had you known that you would — and we have talked about this quite a bit and, I believe, [trial counsel] did as well. Concerning the time that you spent in jail — in prison up in Ohio after the detainer had been filed, was it your understanding that you would receive credit for that time that you served?

A: Yes, ma'am.

Q: And did you get that understanding from what [trial counsel] said to you?

A: Yes, ma'am.

Q: So if you knew you were not going to receive that credit from the time that you served in Ohio after the detainer had been served, would you still have admitted to the violation of probation or would you have gone to a hearing?

A: I would have gone to a hearing, ma'am.

Trial counsel testified on direct examination at the evidentiary hearing as follows

(Respondent's Exhibit 9, pp. 16–17):

Q: Okay. . . . [H]e alleges you were ineffective for misrepresenting the credit [for] time served in Ohio and for failing to petition the Court for that credit.

A: I would defer to the record of whether I did or did not.

Q: Okay. Do you agree that he is, as a matter of law, entitled to the credit that he served in Ohio?

A; Yes.

Q: You believe he's entitled or do you believe that that's within the discretion of the Court?

A: Oh. Yeah, to clarify that, I would hope that he would get all credit that he deserves, legally under the law, for the time that he spent in Ohio all the way up through the time he was sentenced.

Q: Okay. He also alleges that he entered his admission fully expecting to get credit for that 25 months. Do you recall discussions with him specifically about that, about whether or not he would get that credit?

A: I do recall — yes, I recall having question — or discussions with him about the need to see that he does get credit for all time that he's legally entitled to receive.

Trial counsel further testified on cross-examination at the evidentiary hearing as follows

(Respondent's Exhibit 9, p. 25):

Q: And did you explain to him that he would get credit for the time that he spent in the Ohio prison after the detainer had been served?

A: I think, yeah, I think there's a strong likelihood that I would say that.

Q: Okay. And that was the understanding that — or the conversation that you and Mr. Armbruster had after he had been extradited to Florida, correct?

A: I would say most likely it would either — it would have been at the time he was extradited to Florida and it probably was a running conversation that continued all the way to the day of the hearing — or the day of the court appearance in front of Judge Ficarotta.

The state post-conviction court denied this ground of ineffective assistance of counsel after the evidentiary hearing as follows (Respondent's Exhibit 10, pp. 10–13) (court's record citations omitted):

Defendant alleges ineffective assistance of counsel when counsel misrepresented credit for time served in Ohio and failed to petition and notify the Court of that credit. Specifically, Defendant alleges he has been incarcerated since November 23, 2009. He alleges Hillsborough County issued an arrest warrant and detainer on December 7, 2009. He alleges due to the detainer and warrant, he was unable to exercise his custody while incarcerated in Ohio and was ineligible for a substance abuse prison diversion program. He alleges he appeared before the Court on March 5, 2012, and was sentenced for the violation. He alleges his probation was revoked due to his incarceration in Ohio. Therefore, he alleges because his probation was revoked due to the offense and subsequent incarceration in Ohio, Defendant is entitled to credit from the time of the initial arrest on that offense.

He alleges his counsel was fully aware of his out of state incarceration as well as the fact that this incarceration was the reason for revocation in Florida. However, he alleges his counsel failed to petition the Court for this credit. He alleges he entered his plea fully expecting to get credit for the twenty-five months he served while under a detainer. He alleges counsel's failure to petition the Court for and secure said credit prejudiced Defendant. He alleges had he known that his counsel would not petition the Court for said credit and he would not receive the credit, he would not have entered a

plea. After reviewing the allegations, the court file, and the record, the Court finds Defendant's allegations are facially sufficient.

At the hearing, Mr. Souza admitted he and Defendant had a discussion about maintaining or alerting the Court to the gain time he was entitled to. He admitted Defendant was entitled to credit for the time he served in Ohio. When asked if he recalled having discussions with Defendant, he responded, "I do recall — yes, I recall having question — or, discussions with him about the need to see that he does get credit for all time that he's legally entitled to receive."

On cross-examination, Mr. Souza testified there was a strong likelihood that he explained to Defendant that he would get credit for the time he spent in the Ohio prison after the detainer had been served.

Defendant admitted that when he got to the violation of probation hearing, he heard he would get credit for the two years he spent in Ohio and the State was going to stand silent. He admitted that based on Mr. Souza's representations he did not proceed to a violation of probation hearing. He testified if he had known that he would not get credit for the time he spent in Ohio after the detainer was served, he would have gone to a hearing.

After reviewing the allegations, the testimony, evidence, and arguments presented at the February 12, 2014, evidentiary hearing, the court files, and the record, the Court finds Mr. Souza's testimony to be more credible than that of Defendant. The Court finds "[a] trial court has discretionary authority to award credit for the time a defendant was incarcerated outside the state while awaiting transfer to Florida." *McRae v. State*, 820 So. 2d 1048, 1049 (Fla 2d DCA 2002), *see also Kronz v. State*, 462 So. 2d 450, 451 (Fla 1985), *DeGeso v. State*, 771 So. 2d 1264, 1265 (Fla. 2d DCA 2000). When considering whether to award credit, "a trial court should consider whether the defendant was being held 'solely because of the Florida offense for which he or she is being sentenced.'" *DeGeso*, 771 So. 2d at 1265 (quoting *Kronz*, 462 So. 2d at 451).

The Court finds at the time he was in prison in Ohio, Defendant was not in Ohio solely because of the Florida offenses, but was serving prison in Ohio because of the Ohio offenses he committed while serving his Florida probation in Ohio. The Court finds although Mr. Souza advised the Court on March 5, 2012, that Defendant had served two years prison in Ohio, he did not ask the Court to give Defendant credit for said time. However, the Court finds Mr. Souza did subsequently file a motion for modification of sentence. The

Court finds at the April 16, 2012, hearing on the motion for modification of sentence, Mr. Souza argued to the Court that there was a detainer issued by the State of Florida on December 7, 2009, and he thought Defendant should be able to get credit from that period of time going forward. The Court finds Judge Ficarrotta responded that he did not know if Defendant got credit for that time period, but that he was to get credit for everything he was entitled to. The Court denied the motion for modification of sentence and the ten-year prison sentence remained.

The Court further finds although Mr. Souza hoped the Court would give Defendant credit for time he spent in the Ohio prison and requested such at the April 16, 2012, hearing, Mr. Souza did not guarantee that Defendant would receive such credit. The Court finds it was within the Court's discretion to determine whether Defendant should receive the Ohio credit. However, the Court finds it was unreasonable for Defendant to believe that based on the fact that Defendant had just been released from the Ohio prison on a similar charge, that the Court would use its discretion to grant the Ohio credit. As such, the Court finds Defendant cannot demonstrate that Mr. Souza acted deficiently or any resulting prejudice when even if Mr. Souza had petitioned the Court, the award of such credit is discretionary; not mandatory. The Court finds even when Mr. Souza raised it at the motion for modification of sentence hearing, the Court did not award such credit, but announced Defendant would receive credit for everything he was entitled to. Because the award of the Ohio credit was discretionary and not mandatory, Defendant cannot prove entitlement to the Ohio credit. As such, no relief is warranted upon [this] claim . . . .

The AEDPA "erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." *Daniel v. Comm'r, Ala. Dep't of Corr.*, 822 F.3d 1248, 1260 (11th Cir. 2016). A question of the credibility and demeanor of a witness is a question of fact. See *Consalvo v. Sec'y for Dep't of Corr.*, 664 F.3d 842, 845 (11th Cir. 2011) (citing *Freund v. Butterworth*, 165 F.3d .939, 862 (11th Cir. 1999) (*en banc*)). Under Section 2254(e)(1), "[f]ederal habeas courts generally defer to the factual findings of state courts, presuming the facts to be correct unless they are rebutted by clear and convincing evidence." *Jones v. Walker*, 540 F.3d 1277, 1288 n.5 (11th Cir. 2008) (*en banc*). *See also Devier v. Zant*, 3 F.3d 1445, 1456 (11th Cir. 1993) ("Findings by the state court concerning historical facts and assessments of witness

credibility are . . . entitled to the same presumption accorded finding of fact under 28 U.S.C. § 2254(d)."), *cert. denied*, 513 U.S. 1161 (1995). "Determining the credibility of witnesses is the province and function of state courts, not a federal court engaging in habeas review. Federal habeas courts have 'no license to redetermine credibility of witnesses whose demeanor was observed by the state court, but not by them.'" *Consalvo*, 664 F.3d at 845 (quoting *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983)). This deference applies to a credibility determination that resolves conflicting testimony. *See Baldwin v. Johnson*, 152 F.3d 1304, 1316 (11th Cir. 1998) ("We must accept the state court's credibility determination and thus credit [the attorney's] testimony over" the applicant's testimony."); *cert. denied*, 526 U.S. 1047 (1999). The deference is heightened when reviewing a credibility determination in a Section 2254 application. *Gore v. Sec'y, Dep't of Corr.*, 492 F.3d 1273, 1300 (11th Cir. 2007), *cert. denied*, 552 U.S. 1190 (2008). *Accord Kurtz v. Warden, Calhoun State Prison*, 541 F. App'x 927, 929 (11th Cir. 2013) ("'A certain amount of deference is always given to a trial court's credibility determinations' and a credibility determination in a case on habeas review receives heightened deference.") (quoting *Gore*, 492 F.3d at 1300), *cert. denied sub nom, Kurtz v. Jeanes*, 134 S. Ct. 2728 (2014)). The state court's credibility determination is presumed correct. *See Rice v. Collins*, 546 U.S. 333, 341–42 (2006) ("Reasonable minds reviewing the record might disagree about the [witness's] credibility, but on habeas review that does not suffice to supersede the trial court's credibility determination.").

The state post-conviction court found counsel more credible than Armbruster. Armbruster has not shown, by clear and convincing evidence, that the state court's credibility determination was unreasonable. *See Jones*, 540 F.3d at 1288 n.5. Furthermore, the record shows that, although counsel did not request at sentencing that Armbruster receive credit for the time served in Ohio, trial counsel did subsequently file a motion for modification of sentence in which counsel

specifically requested that Armbruster receive such credit. (Respondent's Exhibit 10, transcript of April 16, 2012, hearing, p. 4) The state judge concluded at the hearing on the motion that Armbruster "gets credit for everything he's entitled to" but did not conclude that Armbruster was entitled to credit for the time served in Ohio and denied the motion for modification. (*Id*. at pp. 4-5)

Armbruster presents no evidence establishing entitlement to credit for the time served in Ohio. Consequently, he fails to meet his burden of rebutting with clear and convincing evidence the presumption of correctness afforded the state post-conviction court's credibility determination. 28 U.S.C. § 2254(e)(1). The state courts' rejection of this ground of ineffective assistance of trial counsel was neither contrary to, or an unreasonable application of, *Strickland* nor was the ruling based on an unreasonable determination of the facts in light of the evidence presented in state court. 28 U.S.C. § 2254(d)(1), (d)(2). Ground one warrants no relief.

**Ground Two**

Armbruster contends that his trial counsel rendered ineffective assistance by not filing either a motion to withdraw plea or a notice of appeal. Armbruster alleges that during the Rule 3.850 evidentiary hearing his trial counsel acknowledged that Armbruster asked him to preserve and perfect an appeal but counsel admitted that he "neither filed a motion to withdraw or a notice of appeal . . . ." (*Id*.) Armbruster argues that counsel's alleged error resulted in a failure "to preserve the Petitioner's due process rights."

Motion to withdraw plea

In his Rule 3.850 motion Armbruster alleged the following (Respondent's Exhibit 5, p. 10) (footnotes omitted):

> The Supreme Court of the United States has held that there is a constitutionally imposed duty on an attorney to consult with a defendant about an appeal if there is reason to think that a rational[] defendant would want an appeal or that a particular defendant has

reasonably demonstrated that he or she was interested in appealing. In the cause at hand the Defendant asked counsel if it was possible to file an appeal. Counsel advised that the only option was a motion under Fla. R. Crim. P. 3.800(c) - Motion to Modify Sentence. This clearly is not the case as Fla. R. App. P. 9.104(b)(1)(D) state[s] that a defendant "can appeal orders revoking or modifying probation." Counsel also stated that he was not retained to be the Defendant's appellate counsel. This in itself is a direct violation of Fla. R. Crim. P. 9.104(d)(1) which state[s,] "An attorney has an obligation to preserve the right to appeal when asked, even if the defendant will be represented on appeal by a different attorney."

Defense counsel's failure to be forthright with the Defendant in regards to his options prevented the Defendant from exercising his right to file a timely motion under Fla. R. Crim. P. 3.170(l) or to file a direct appeal; the defendant would have to file either within thirty (30) days of sentencing. Instead counsel filed a motion to modify sentence which was not heard until April 16, 2012, well beyond thirty (30) days after sentencing (March 5th, 2012). These actions frustrated the Defendant's efforts to exercise his right to appeal because counsel remained the Defendant's attorney of record and any *pro se* motions filed, such as a timely 3.170(l) [motion] in this case would be considered a nullity. Inasmuch as counsel's actions amount[] to ineffectiveness thus denying the Defendant his right to competent, effective counsel. If not for counsel's actions the Defendant would have been able to file a timely motion to withdraw plea or a direct appeal in order to request a full revocation hearing due to counsel's ineffectiveness.

After ordering the State to respond, the state post-conviction court denied this claim of ineffective assistance of counsel as follows (Respondent's Exhibit 10, p. 18) (court's record citations omitted):

Defendant alleges ineffective assistance of counsel due to counsel's failure to file a timely motion to withdraw plea under rule 3.170(1) At the evidentiary hearing, [trial counsel] admitted his office did not file a motion to withdraw plea. Defendant admitted [trial counsel] did not file a motion to withdraw the plea even though he asked him to do so. However, he did not recall [trial counsel] advising him that he could either have a hearing or could admit to the violation. He denied knowing that if he had a violation of probation hearing, the State would have to present evidence that he violated.

After reviewing the allegations, the testimony, evidence, and arguments presented at the February 12, 2014, evidentiary hearing,

> the court files, and the record, the Court finds Defendant failed to meet his burden to prove that if [trial counsel] had filed a motion to withdraw plea, the motion would have been granted. Consequently, the Court finds Defendant failed to prove prejudice. As such, no relief is warranted upon this portion of [this] claim . . . .

In his Rule 3.850 motion Armbruster stated no basis for withdrawing his plea. Accordingly, he failed to demonstrate either cause or prejudice under *Strickland.* To the extent that he asserts in his federal petition that counsel erred by not moving to withdraw the plea based on Armbruster not receiving credit for the time served in Ohio, he cannot obtain relief because his proposed basis to withdraw his plea was considered by the state post-conviction court notwithstanding the lack of a motion to withdraw plea as discussed in ground one, *supra*. Armbruster's failure to satisfy *Strickland's* requirements precludes relief on this claim of ineffective assistance of counsel. The state courts' rejection of this ground of ineffective assistance of trial counsel was neither contrary to, or an unreasonable application of, *Strickland,* nor was the ruling based on an unreasonable determination of the facts in light of the evidence presented in state court. 28 U.S.C. § 2254(d)(1), (d)(2).

Notice of appeal

Armbruster claims that his trial counsel rendered ineffective assistance by not filing a notice of appeal. Even assuming that trial counsel performed deficiently by not filing a notice of appeal on Armbruster's behalf, Armbruster fails to satisfy *Strickland's* prejudice requirement. Armbruster's probation was revoked and his sentence imposed in March 2012. The sentencing judge advised Armbruster at the conclusion of the revocation hearing that he had thirty days to appeal the judgment and sentence. (Respondent's Exhibit 10, transcript of March 5, 2012, revocation hearing, p. 12) Because his trial counsel filed no notice of appeal, Armbruster alleged in his Rule 3.850 motion that his trial counsel rendered ineffective assistance. The state

post-conviction court dismissed this claim of ineffective assistance of counsel in its August 2013 order as follows (Respondent's Exhibit 6, pp. 7–8):

> [W]ith respect to counsel's failure to file a timely appeal when asked, the Court finds because the relief sought is a belated appeal, Defendant must seek such relief in the appellate court. *See* Fla. R. Crim. P. 3.850(1). This Court does not have jurisdiction to grant defendant a belated appeal. As such, this portion of [this] claim . . . is dismissed without prejudice to any right Defendant may have to file a timely petition for a belated appeal in the appellate court.

Under Rule 9.141(c)(5)(A), Florida Rules of Appellate Procedure, Armbruster had two years after the expiration of time for filing the notice of appeal from the final revocation order — until April 2014 — to file a petition for belated appeal. When the state post-conviction court dismissed his claim of ineffective assistance of counsel in August 2013, Armbruster still had approximately eight months in which to file a petition for belated appeal. Armbruster acknowledges in his reply that he petitioned for a belated appeal in 2016 "which was subsequently denied as untimely." (Doc. 9, p. 8) He claims that "[t]he untimely filing was not due to a lack of due diligence but rather was an outcome of the Petitioner allowing the [s]tate [a]ppeals court an opportunity to rule on the post-conviction claim first." (*Id.*)

Even assuming that trial counsel performed deficiently by not filing a notice of appeal on Armbruster's behalf, Armbruster cannot show prejudice because he still had time remaining after the dismissal of his ineffective assistance of counsel claim to file a petition for belated appeal. Inexplicably, and despite notice from the post-conviction court of the procedure for pursuing a belated appeal, Armbruster tarried nearly two years — until July 2016 — to petition the state appellate court for a belated appeal. (Respondent's Exhibit 17) The untimeliness of that petition resulted from Armbruster's own actions. Consequently, Armbruster cannot demonstrate prejudice

resulting from trial counsel's deficient performance as *Strickland* requires. Ground two warrants no federal habeas relief.

**Ground Three**

Armbruster contends that he "was unconstitutionally denied credit against his sentence to which he was lawfully entitled." (Doc. 1, p. 8) Armbruster alleges that "if he had been serving a sentence in the Florida prison system when served with the warrant he would have been brought before the court issuing the warrant in a timely manner or he would have been entitled to the credit but since Petitioner was in another jurisdiction there is no statutory requirement to grant the credit." (*Id*.) He further alleges that this "sentence[ing]practice is prejudicial and violates the Petitioner's Due Process rights as guaranteed by the Constitution of the United States." (*Id*.) Armbruster additionally asserts in his reply that "Florida law excludes him from being treated like other incarcerated defendants even though the Petitioner was at all relevant times under the jurisdiction of the State of Florida," resulting in a violation of his constitutional right to equal protection.

Respondent correctly argues that this ground is unexhausted and procedurally defaulted because Armbruster did not present the ground to the state court. Armbruster replies that he raised this claim in his memorandum of law filed with his initial brief in the appeal of the denial of his Rule 3.850 motion. However, Armbruster did not present to either the state post-conviction court or the state appellate court either a federal due process claim or a federal equal protection claim based on the alleged unconstitutionality of Florida's discretionary award of credit for time served in an out-of-state jurisdiction. Consequently, the ground is unexhausted.

 Before a federal court can grant habeas relief, a petitioner must exhaust every available state court remedy for challenging his conviction, either on direct appeal or in a state post-conviction motion. 28 U.S.C. § 2254(b)(1)(A), (C). "[T]he state prisoner must give the state

courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). *See also Henderson v. Campbell*, 353 F.3d 880, 891 (11th Cir. 2003) ("A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts.") (citations omitted). To exhaust a claim, a petitioner must present the state court with both the particular legal basis for relief and the facts supporting the claim. *See Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir. 1998) ("Exhaustion of state remedies requires that the state prisoner 'fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass on and correct alleged violations of its prisoners' federal rights.'") (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995)). The prohibition against raising an unexhausted claim in federal court extends to both the broad legal theory of relief and the specific factual contention that supports relief. *Kelley v. Sec'y for Dep't of Corr.*, 377 F.3d 1317, 1344 (11th Cir. 2004).

The requirement that a petitioner exhaust each available state court remedy as a prerequisite to federal review is satisfied if the petitioner "fairly presents" his claim in each appropriate state court and alerts that court to the federal nature of the claim. 28 U.S.C. § 2254(b)(1); *Picard v. Connor*, 404 U.S. 270, 275-76 (1971). A petitioner may raise a federal claim in state court "by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such claim on federal grounds, or by simply labeling the claim 'federal.'" *Baldwin*, 541 U.S. at 32. Armbruster's failure to present either his federal due process claim or his federal equal protection claim to the state court deprived the state court of a "full and fair opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *Boerckel*, 526 U.S. at 845. *See also Anderson v. Harless*, 459 U.S. 4, 5 6 (1982) ("It is not enough that all the facts necessary to support the federal claim were before the state courts or

that a somewhat similar state law claim was made.").  State procedural rules preclude Armbruster from returning to state court to present his federal claims in either a direct appeal or a second Rule 3.850 motion.  Armbruster's failure to properly exhaust his federal claims in the state courts results in a procedural default.

"If the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is applicable."  *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001).  To establish cause for a procedural default, a petitioner "must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court."  *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999).  To show prejudice, a petitioner must demonstrate not only that an error at the trial created the possibility of prejudice but that the error worked to his actual and substantial disadvantage and infected the entire trial with error of constitutional dimension.  *United States v. Frady*, 456 U.S. 152 (1982).  In other words, a petitioner must show at least a reasonable probability of a different outcome.  *Henderson*, 353 F.3d at 892.

Absent a showing of cause and prejudice, a petitioner may obtain federal habeas review of a procedurally defaulted claim only if review is necessary to correct a fundamental miscarriage of justice.  *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Murray v. Carrier*, 477 U.S. 478, 495 96 (1986).  A fundamental miscarriage of justice occurs if a constitutional violation has probably resulted in the conviction of someone who is "actually innocent."  *Schlup v. Delo*, 513 U.S. 298, 327 (1995); *Johnson v. Alabama*, 256 F.3d 1156, 1171 (11th Cir. 2001).  To meet the "fundamental miscarriage of justice" exception, Armbruster must show constitutional error coupled with "new

reliable evidence — whether . . . exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence — that was not presented at trial." *Schlup*, 513 U.S. at 324.

Armbruster fails to allege or show cause and prejudice for the default of either a federal due process claim or a federal equal protection claim challenging the constitutionality of Florida's procedure for awarding credit for time served in an out-of-state jurisdiction. He cannot meet the "fundamental miscarriage of justice" exception because he presents no "new reliable evidence" that he is actually innocent. *Schlup*, 513 U.S. at 327. Because he satisfies neither exception to procedural default, Armbruster's federal due process claim and his federal equal protection claim are procedurally barred from federal review.

Accordingly, Armbruster's petition for the writ of habeas corpus (Doc. 1) is **DENIED**. The clerk shall enter a judgment against Armbruster and **CLOSE** this case.


### DENIAL OF BOTH A
### CERTIFICATE OF APPEALABILITY
### AND LEAVE TO APPEAL *IN FORMA PAUPERIS*


**IT IS FURTHER ORDERED** that Armbruster is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability ("COA"). Section 2253(c)(2) limits the issuing of a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." To merit a certificate of appealability, Armbruster must show that reasonable jurists would find debatable both (1) the merits of the underlying claims and (2) the procedural issues he seeks to raise. *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000); *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir 2001). Because he fails to show that reasonable jurists would not debate either

the merits of the claims or the procedural issues, Armbruster is entitled to neither a certificate of appealability nor leave to appeal *in forma pauperis*.

Accordingly, a Certificate of Appealability is **DENIED**. Leave to appeal *in forma pauperis* is **DENIED**. Armbruster must obtain permission from the circuit court to appeal *in forma pauperis*.

**DONE** and **ORDERED** in Tampa, Florida this 26th day of November 2019.

Charlene Edwards Honeywell
United States District Judge

Copies furnished to:

All parties of record including unrepresented parties, if any